IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DEBORAH A. KENSETH,

                   OPINION AND ORDER

     Plaintiff,

                   08-cv-1-bbc

  v.

DEAN HEALTH PLAN, INC.,

     Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

   In 2005, plaintiff Deborah Kenseth underwent an expensive surgical procedure to treat an acid reflux condition. Before the surgery, plaintiff called a customer service representative of defendant Dean Health Plan, Inc., the claims administrator for plaintiff's health insurance plan. After plaintiff described the procedure she was seeking, the representative told plaintiff that the surgery was covered by the plan.

   What plaintiff did not tell the representative was that her acid reflux was a complication resulting from the gastric bands surgically inserted in her stomach a number of years earlier in order to help her lose weight. Defendant's plan does not cover surgery for treating obesity or any other treatment "related to" such surgery. When defendant discovered the reason for the procedure, it denied plaintiff's claim for benefits.

1

Plaintiff originally filed this suit in state court, asserting claims under state law for breach of contract and breach of the duty of good faith and fair dealing. Defendant removed the case and filed a motion to dismiss plaintiff's claims on the ground that they were preempted by the Employee Retirement Income Security Act of 1974, §§ 1001-1461. In response, plaintiff mooted defendant's motion by filing an amended complaint that deleted her state law contract claims and replaced them with claims brought under ERISA. Defendant's motion for summary judgment on plaintiff's amended complaint is now ripe for review.

Plaintiff's situation is an unfortunate one. Before having the surgery in 2005, she did what she thought was reasonable, which was call defendant's customer service to ask about coverage for her surgery, a course of action encouraged by defendant's plan. Although plaintiff did not give the customer service representative all the relevant information, this may be because she did not realize its importance. Plaintiff relied on the information she received from defendant and underwent an expensive procedure when she could have explored other options had she known that defendant would not provide coverage.

Although plaintiff's actions are understandable, this does not mean that defendant has violated the law. It may be that the representative could have asked plaintiff more questions to determine whether any exclusions might apply, but the representative's answer was not necessarily inaccurate in light of the information plaintiff provided. Even if the

2

representative had given plaintiff false information, the law is clear that oral misrepresentations of an employee may bind an insurer to modify a written agreement only when that agreement is ambiguous. Defendant's plan is not ambiguous on this point. Plaintiff cannot argue successfully that it is unclear whether a procedure to address complications from an earlier surgery is "related to" the earlier surgery. Had plaintiff read her plan documents, she would have seen that the plan excluded the 2005 surgery from coverage. It may not be realistic to expect members to read their plans, but that is what current law requires. On the other hand, plaintiff has not identified any law that required defendant to identify in the plan a way that members may obtain definitive preapproval when the plan itself is clear.

Plaintiff may be right that defendant should have been more sympathetic to her case in light of the significant hardship that its denial of benefits would cause her. However, in the absence of any showing that defendant violated the law, I must grant its motion for summary judgment.

From the parties' proposed findings of fact, I find the following facts to be undisputed.

## UNDISPUTED FACTS

In 1987, plaintiff Deborah Kenseth elected to have vertical gastric banding in order

to address her long term struggle with obesity. (According to Wikipedia, http://en.wikipedia.org/wiki/Adjustable_gastric_band, the gastric band creates a small pouch at the top of the stomach that fills with food quickly, which sends a message to the brain that the stomach is full.) The health insurance plaintiff had at the time provided coverage for the procedure. After the procedure, plaintiff lost more than 120 pounds.

In 1996, plaintiff began working for Highsmith, Inc. and enrolled in its employment health plan. Defendant Dean Health Plan, Inc. is the plan's claims administrator. Defendant determines whether a particular treatment is eligible for coverage under the plan and pays any claims that it concludes are covered.

Through 2005, that plan stated that "Non-Covered Services" included "any surgical treatment or hospitalization for treatment of morbid obesity." (The parties agree that plaintiff was morbidly obese in 1987.) In addition the plan excludes coverage for "[s]ervices and supplies related to a non-covered service." In 2006, defendant changed the plan to list as exclusions "[s]ervices or supplies for, or in connection with, a non-covered procedure or service, including complications."

The 2005 plan says that oral statements may not increase, reduce or otherwise modify benefits described in the plan. No version of the plan identifies a mechanism for obtaining preapproval of a procedure that will be performed by a plan provider in a plan facility. However, the plan instructs participants with questions regarding benefit coverage to call a

4

customer service representative.

In September 2004, plaintiff was admitted to the hospital because she was experiencing "persistent vomiting" and a "burning in her esophagus." After performing a gastroscopy, the treating physician concluded that plaintiff's symptoms were the result of "[g]astric outlet obstruction from the vertical banded gastroplasty." Defendant paid for this procedure. (Plaintiff proposes as a fact that defendant paid for other illnesses caused by the 1987 surgery as early as 2001, including pneumonia and hair loss. In support of that fact, plaintiff cites her own affidavit and an exhibit attached to her lawyer's affidavit containing dozens of unidentified medical records that plaintiff fails to explain. Because neither plaintiff nor her lawyer is qualified to testify regarding the causes of medical conditions or interpret her medical records, I have not considered this proposed fact.)

In November 2005, plaintiff's treating physician recommended to plaintiff that she have the gastric bands "revised." Plaintiff did not consult her plan documents to determine whether the surgery would be covered. Instead, she called defendant's customer service phone number. Plaintiff told the customer service representative that she was having "a reconstruction of a Roux-en-Y stenosis." When the representative asked "what that had to deal with," plaintiff told her "the bottom of the esophagus because of all the acid reflux that I was having." Although plaintiff knew that the surgery was intended to resolve complications caused by the gastric banding procedure performed in 1987, she did not tell

5

the representative this. After consulting with a colleague, the representative informed plaintiff that the plan covered the procedure, subject to a $300 co-pay. The representative's notes state that plaintiff was having "reconstru[c]tive es[o]pha[g]us surgery." Defendant does not train its customer service representatives to tell members that they cannot rely on the information provided by the representative.

On December 6, 2005, plaintiff underwent surgery to "revise" the gastric bands so that she would no longer suffer from acid reflux. On December 8, defendant informed plaintiff that it would not pay for the surgery because it was not covered by the plan. In particular, defendant relied on the provisions excluding from coverage any surgery for treating morbid obesity and any service "related to" such surgery.

Plaintiff was discharged from the hospital on December 10 but returned on January 14, 2006 and stayed until January 30 as a result of a "persistent infection" that developed from the surgery. Defendant did not provide coverage for that hospitalization.

OPINION

Plaintiff advances three reasons why she believes it was unlawful for defendant to deny her benefits for the surgery to revise her gastric bands: (1) defendant breached various fiduciary duties it had to her; (2) defendant is estopped from denying benefits because she relied on incorrect information provided by defendant's customer service representative; and

6

(3) defendant violated a state law that limits exclusions for preexisting conditions. Defendant raises a fourth issue, which is whether its interpretation of the plan was arbitrary and capricious, but plaintiff never alleged such a claim so I need not consider it.

### A. Breach of Fiduciary Duty

ERISA imposes a number of fiduciary duties under the statute itself as well as the common law of trusts. Varity Corp. v. Howe, 516 U.S. 489, 496-97 (1996). Plaintiff contends that defendant violated its fiduciary duties to explain the plan adequately, to identify a procedure for obtaining preapproval for treatment and to process claims consistently with respect to similarly situated claimants.

In one paragraph in its opening brief, defendant argues that plaintiff's claim for breach of a fiduciary duty "is simply an alternative approach to an ERISA breach of contract claim alleging improper denial of benefits" and that, under those circumstances, Varity requires dismissal of the claim as "redundant and unavailable." Dft.'s Br., dkt. #23, at 13. Defendant fails to explain how plaintiff's claim for breach of a fiduciary duty is simply a contracts claim in disguise. The only discussion in Varity regarding the relationship between the two types of claims was dicta regarding the standard of review. Varity, 516 U.S. at 514 ("characterizing a denial of benefits as a breach of fiduciary duty does not necessarily change the standard a court would apply"). Accordingly, I cannot conclude that plaintiff's

7

claim is procedurally improper and I will turn to the merits.

Plaintiff's primary argument is that defendant had a duty to provide a procedure in the plan for a member to confirm coverage for particular treatment. Such a procedure might be good policy, but the question is whether ERISA requires it. In arguing that it does, plaintiff relies almost entirely on Bowerman v. Wal-Mart Stores, Inc., 226 F.3d 574, 590 (7th Cir. 2000).

Unfortunately for plaintiff, Bowerman does not help her. In that case, the court found a fiduciary duty under 29 U.S.C. § 1022(a), which requires that plans be "written in a manner calculated to be understood by the average plan participant" and "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." In other words, the question is whether an average person could read the plan and determine whether a service is covered. Only if the answer to that question is "no" does the fiduciary become obligated to provide a member with another means of determining coverage. Bowerman, 226 F.3d at 591 ("If the written materials [are] inadequate, then the fiduciaries themselves must be held responsible for the failure to provide complete and correct material information in the event that a nonfiduciary agent provides misleading information") (quoting Schmidt v. Sheet Metal Workers' National Pension Fund, 128 F.3d 541, 548 (7th Cir. 1997)).

In this case, no reasonable person reading the plan would have difficulty determining

8

that the plan would not cover plaintiff's 2005 surgery. The plan states that it does not cover "any surgical treatment" for "morbid obesity" and any service "related to" such surgery. The term "related to" is broad. Gregory v. Home Insurance Co., 876 F.2d 602, 606 (7th Cir. 1989) ("the word 'related' covers a very broad range of connections, both causal and logical"). Certainly, a later surgery that corrects problems associated with an earlier one is "related to" the earlier surgery. Cf. Carr v. Gates, 195 F.3d 292 (7th Cir. 1999) (upholding finding that 1995 surgery addressing problems from gastric stapling surgery in 1979 was performed "in connection with" earlier surgery).

Plaintiff's sole argument on this point is that the second surgery is properly characterized as treating "complications" from the first surgery and the plan did not single out "complications" for exclusion until 2006, after plaintiff underwent the second surgery. Plaintiff's argument is not a persuasive one. The phrase "related to" encompasses "complication from." Of course, defendant could have attempted to exhaustively list every type of procedure that is related to another, but the law does not require that. The phrase "related to" is not a term of art that only a technical writer can understand. Although there may be instances in which reasonable minds could differ on the question whether one procedure is "related to" another, plaintiff's two procedures do not fall into that category. Gregory, 876 F.2d at 606 (noting that "[a]t some point, of course, a logical connection may be too tenuous reasonably to be called a relationship" but rejecting argument that word

9

"related" was ambiguous because "[t]he facts of this case . . . comfortably fit within the commonly accepted definition of the concept"). Had plaintiff read the plan documents, she could have determined that the surgery would not be covered.

Plaintiff points to other provisions in ERISA and its implementing regulations as requiring defendant to provide a mechanism for a member to obtain preapproval, but none actually relates to that issue. For example, plaintiff cites 29 C.F.R. § 2560.503-1(b), which discusses circumstances under which the "claims procedures will be deemed reasonable" (for what purpose and by whom the regulation does not say). In particular, plaintiff relies on subsection (b)(3), which suggests that it would be unreasonable to deny a claim "for failure to obtain a prior approval under circumstances that would make obtaining such prior approval impossible."

This provision deals with prior approval, but not in a way that is relevant to plaintiff's claim. It simply says that if a plan requires prior approval for treatment, the plan must provide a way to obtain that approval. This requirement does not help plaintiff. Defendant denied plaintiff's claim not because she failed to obtain prior approval but because her procedure was not covered by the plan.

Plaintiff points to another part of § 2560.503-1(b)(3) that says that the plan may not be "administered in a way, that unduly inhibits or hampers the initiation or processing of claims for benefits." She argues that defendant violated this provision by encouraging

10

members to call customer service with questions about benefits. However, she fails to develop any argument regarding how such a general prohibition applies to her situation. Although it may seem unfair to plaintiff that defendant may act inconsistently with answers provided in a process it encourages, plaintiff points to nothing in the plan document that binds defendant in that way. Rather, the plan makes it clear that oral statements are not binding.

Plaintiff identifies another duty in 29 C.F.R. § 2560.503-1(b)(1)(5), which says that the plan should set up "administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants." Plaintiff says this provision prohibited defendant from denying benefits for the December 2005 surgery when in 2004 it had paid for previous treatment that was prompted by the gastric band surgery.

Even if I assume that § 2560.503-1(b)(1)(5) imposes a fiduciary duty under ERISA, it does not apply in this case for at least two reasons. First, the regulation addresses treatment of "similarly situated *claimants*;" it does not impose any requirement regarding different procedures for the same claimaint. Second, the regulation says only that the plan should have "processes" and "safeguards" so that "where appropriate" its provisions are applied consistently. It does not support plaintiff's much broader view that once defendant

11

mistakenly paid for a procedure that may not have been covered by the plan, it was forever obligated to continue paying for subsequent procedures.

Plaintiff has not identified any fiduciary duty under ERISA that defendant violated. Accordingly, defendant's motion for summary judgment must be granted with respect to this claim.

### B. Estoppel

Plaintiff's estoppel claim is similar to her claim for breach of a fiduciary duty.  In a nutshell, her argument is that defendant may not deny her benefits because she relied on the misrepresentation of the customer service representative that defendant would cover the surgery.

This claim fails as well.  First, it is undisputed that plaintiff failed to tell the representative that the purpose of the surgery was to address complications created by an earlier procedure for treating obesity.  Plaintiff does not argue that the representative must have known this by plaintiff's use of the words "Roux-en-Y stenosis," a phrase that plaintiff does not explain.  Thus, the representative's answer was not necessarily inaccurate in light of the information plaintiff gave her.

In any event, plaintiff concedes that "oral representations will not support an ERISA estoppel claim for benefits that are different from benefits unambiguously stated in a written

12

plan." Plt.'s Br., dkt. #33, at 26 (citing Bowerman, 226 F.3d at 586). See also Kannapien v. Quaker Oats Co., 507 F.3d 629, 637 (7th Cir. 2007) ("Oral misrepresentations may become grounds for ERISA estoppel only where plan documents are ambiguous or misleading.") As I discussed earlier in connection with plaintiff's claim for a breach of a fiduciary duty, the plan was not ambiguous on the question whether defendant would cover a surgery to address complications from an earlier surgery for treatment of morbid obesity.

Finally, plaintiff relies on testimony by defendant's customer service director that defendant provides coverage "in some instances" when a member incurs out of pocket expenses as a result of a customer representative's having provided inaccurate information. Plt.'s Br,. dkt. #33, at 20. It is not clear what relevance plaintiff believes such testimony has to the issues in this case. Even if the representative did provide inaccurate information and it is defendant's practice to reimburse members "in some instances" when that happens, this does not mean that ERISA *requires* them to do so. To the extent that plaintiff means to argue that defendant is violating 29 C.F.R. § 2560.503-1(b)(1)(5) by failing to treat her the same as other members, the director's testimony is far too vague to satisfy the requirement of Fed. R. Civ. P. 56 to set forth "specific facts" in opposing a motion for summary judgment.

13

C.  State Law

Wisconsin law prohibits insurers from having "a preexisting condition exclusion" that lasts longer than 12 months. Wis. Stat. § 632.756(1)(m). Plaintiff says that her gastric bands were a preexisting condition within the meaning of that statute and that defendant violated § 632.756(1)(m) by refusing to pay for the complications that arose from the placement of the bands.

Even if I assume that the Wisconsin legislature intended to allow individuals to file a civil action under § 632.756 or that the statute may be enforced through ERISA and I assume that a gastric band is "a condition" within the meaning of the statute, this claim must be dismissed because the provision plaintiff is challenging is not "a preexisiting condition exclusion." Under defendant's plan, it is irrelevant *when* plaintiff had the gastric bands inserted; *why* she did so is the only thing that matters. Defendant would have been denied coverage for the 2005 surgery whether she had inserted the bands before or after she joined the plan in 1996.

In her brief, plaintiff emphasizes the point that her insurer in 1987 had paid for the gastric bands surgery and that by the time she joined defendant's health plan in 1996, "there was nothing she could do to reverse her preexisting condition." Plt.'s Br., dkt. #33, at 38. Although I understand plaintiff's predicament, the policy she is advancing is not the one reflected in Wis. Stat. § 632.756(1)(m). Rather, the rule she envisions is one that would

14

prohibit insurers from denying coverage for complications arising from any condition that was covered by a previous insurer. Plaintiff does not point to such a rule and I am not aware of one. Accordingly, defendant's motion for summary judgment must be granted.

ORDER

IT IS ORDERED that

1. Defendant Dean Health Plan, Inc's motion to dismiss, dkt. #2, is DENIED as moot.

2. Defendant's motion for summary judgment, dkt. #22, is GRANTED.

3. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 29th day of July, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

15