UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

DEBORAH A. KENSETH,

    Plaintiff,

v.    Case No. 08-CV-1-C

DEAN HEALTH PLAN, INC.

    Defendant.

## SECOND AMENDED COMPLAINT

THE PLAINTIFF, Deborah A. Kenseth, by her attorneys, Lawton & Cates, S.C., by attorney Lisa C. Goldman, and for her causes of action against the named defendant, alleges and shows the court as follows:

### PARTIES

1. Plaintiff, Deborah A. Kenseth, is an adult resident of Jefferson County, Wisconsin, who currently resides at 512 Lexington Blvd., Ft. Atkinson, Wisconsin 53538.

2. Defendant Dean Health Plan, Inc. is a Wisconsin Insurance Corporation whose principal place of business is located at 1277 Deming Way, Madison, Wisconsin 53717, and whose registered agent for service of process is Christine C. Duval-Senty, Dean Health Plan Inc., 1277 Deming Way, Madison, Wisconsin 53717.

### FACTS

3. Plaintiff, Deborah A. Kenseth has been employed by Highsmith, Inc. since in 1996. Plaintiff enrolled in Highsmith's employee health plan when she was first

eligible.

4. Plaintiff has maintained continuous health coverage between 1987 and the present.

5. As an employee of Highsmith, Inc., Deborah A. Kenseth became covered under a policy of health insurance issued by Dean Health Plan, Inc., in August of 1996.

6. The benefits available to Deborah A. Kenseth under the Dean group health insurance policy were set forth in a document entitled, the "Group Member Certificate and Benefit Summary" (the "Certificate").

7. In May of 1987, when Deborah A. Kenseth was employed by a prior employer she had Vertical Gastirol Banding surgery, a procedure covered under her prior health insurance policy issued by her prior employer.

8. In 2001, 14 years later, Deborah A. Kenseth developed an acid reflux condition.

9. In April of 2002, Deborah A. Kenseth developed pneumonia and was throwing up on average 3 to 4 times a day.

10. In February of 2003, she was diagnosed with Migraines.

11. In May of 2003, she developed pneumonia again.

12. She was then diagnosed with Eosinophilic Pneumonia.

13. In February 2004, she was diagnosed with Bronchitis.

14. In June of 2004, she was diagnosed as malnourished and began B12 injections and Lexapro.

15. In the fall of 2004, she received a balloon dilation of the gastric pouch outlet by Dr. Christianson.

16. In June of 2005, she received another balloon dilation from Dr. Erickson.

17. On information and belief the cost of the treatment described in paragraphs 8-15 was paid by Dean Health Plan, Inc., even though her medical records showed that Dr. Christiansen's impression was, "gastric outlet obstruction from the vertical banded gastroplasty."

18. In June of 2005, Dr. Erickson also recommended that she have the band removed or undergo a bypass surgery.

19. In October 2005, Ms. Kenseth saw Dr. Christiansen for a second opinion. Christiansen did another endoscopy and recommended Ms. Kenseth see Dr. Paul Huepenbecker, a plan provider in Madison.

20. Dr. Huepenbecker, recommended a "roux revision of the proximal gastric stenosis."

21. It was recommended by two doctors, Huepenbecker and Erickson, that Deborah A. Kenseth have her band removed, to alleviate her medical symptoms.

22. On or about November 15th or 16th, 2005, Deborah A. Kenseth spoke with a customer service representative named Maureen Detmer at Dean Health Plan Insurance, Inc. to get pre-approval of "roux revision of proximal gastric stenosis."

23. Maureen informed Ms. Kenseth that the surgery would be covered and she would have to pay a $300.00 deductible.

24. Dean's policy as stated by the Director of Customer Service, Paskey, is to pay for uncovered benefits when Dean makes a mistake in providing information to plan participants.

25. Had Ms. Kenseth been told the procedure would not be covered by her health insurance she would have looked into other alternatives including but not limited to: joining her husband's health insurance plan, investigating the cost of the surgery at another location including looking into other countries provision of health services for lower costs, or continuing with routine dilatations of the existing band.

26. On information and belief, the insurance benefits at issue in this action are provided pursuant to an unfunded single-employer welfare benefit plan or program under the Employee Retirement Income Security Act (ERISA), 29 U.S.C.A. § 1001 et. seq.

27. The Dean Health Plan, Inc. Group Member Certificate and Benefit Summary provided to the plaintiff stated: "Benefits listed in this Certificate are only available as long as this policy is in force. If you are unsure on whether a service is covered, please call our Customer Service Department prior to having the service performed."

28. In reliance upon the representation described above, on or about November 15 or 16, 2005, plaintiff called defendant's customer service department and requested pre-approval for surgery for "roux revision of proximal gastric stenosis."

29. The customer service representative with whom the plaintiff spoke on November 15 or 16, 2005, informed the plaintiff that the surgery would be covered. The customer service representative did not inform the plaintiff that any additional information from the plaintiff or her physician was necessary for approval or that

written preapproval was required or that Dean could later deny coverage of the claim.

30. On information and belief, defendant knew or should have known of plaintiff's prior treatment for conditions related to her gastric band which were paid by Dean when it approved her surgery.

31. Two days after Deborah A. Kenseth's surgery, which had been pre-approved and which was performed on December 6, 2005, she was informed that the procedure would not be covered.

32. On December 7, 2005, after being informed that Dean Health Plan, Inc., refused to pay the costs of plaintiff's surgery and hospitalization plaintiff was released from St. Mary's Hospital.

33. On or about January 14, 2006, plaintiff was admitted to St. Mary's Hospital for treatment of a subcutaneous abscess cavity which communicates with the perihepatic abscess which extended to the subcutaneous tissue in the mid line. She also suffered a small pleural effusion and persistent subdiaphragmatic collection.

34. Plaintiff was hospitalized at St. Mary's Hospital from 1/14/06 – 1/30/06 for treatment of the conditions described above.

35. Plaintiff received services for the treatment of the conditions described above from: Fort HealthCare, an organization affiliated with Dean and St. Mary's Hospital; Madison Radiologists, an organization affiliated with St. Mary's Hospital; Associated Pathologists, an organization affiliated with St. Mary's

   Hospital; Dr. Edgardo Jiongco, a Radiologist in Fort Atkinson; Fort Atkinson Emergency Physicians; Dean Medical Center and was billed for those services by Dean Health System; St. Mary's Hospital and Surgical Center and was billed for those services by SSM Health Care; and possible other unknown providers of care.

36. Following her release from St. Mary's on or about January 30, 2006, she has continued to receive treatment related to the conditions described above.

37. Upon information and belief Plaintiff owes money or is claimed to owe money to all of the above listed parties for services provided in relation to the claims stated herein, but for which Dean Health Plan denied coverage.

38. Deborah A. Kenseth is entitled to benefits under the terms of the policy from August 1996 and thereafter for the duration of her policy for the treatment of the conditions described above.

39. Upon information and belief Dean Health Plan is directly linked financially to each of the above providers and therefore should be obligated to pay for the treatment plaintiff received directly to the providers of care as a result of Dean's breach of fiduciary duty as determined by the Seventh Circuit Court of Appeals.

40. Dean Health Plan, Inc is a 228,000 plus member HMO jointly owned by Dean Health System and SSM Health Care of Wisconsin.

41. Dean Health System, Inc. is a 450 plus member physician multi-specialty group practicing in Dane county and the same 18-county extended service area as SSM Health Care of Wisconsin.  SSM Health Care of Wisconsin has a small minority

interest in Dean Health System.

42. SSM Health Care of Wisconsin (SSMHC/WI) was created by SSM Health Care (SSMHC) as a regional, non-profit corporation representing SSMHC holdings in south-central Wisconsin. A board of trustees governs the organization. SSMHC is one of the largest Catholic systems in the country. The system has 20 acute care hospitals and three nursing homes in four states: Missouri, Illinois, Wisconsin and Oklahoma. Nearly 5,000 affiliated physicians and 23,200 employees work together to provide a wide range of services.

43. St. Mary's Hospital is a wholly owned subsidiary of SSM Health Care of Wisconsin.

44. Upon information and belief Dr. Paul Hupenbecker and other Dean providers of care are employees and part owners of Dean Health System, Inc.

45. On information and belief, pursuant to agreements between Dean Health Plan and Dean providers, Dean Health Plan pays Dean providers only a fraction of their customary and usual charges for the same procedure for an uninsured patient.

46. Deborah A. Kenseth has incurred medical expenses in the amount of approximately $100,000.00 as a result of having surgical procedures she was told by Dean were covered by her policy.

47. Upon information and belief all of the medical expenses Ms. Kenseth has incurred as a result of having surgical procedures described in this complaint are owed or allegedly owed to providers who are either wholly or partially owned by Dean Health Plan's parent corporations, SSM Health Care of Wisconsin, Inc. and Dean

Health Systems, Inc. or who are affiliated with one of Dean Health Plan's parent corporations.

48. Deborah A. Kenseth has not been paid the appropriate benefits under the terms of the policy, including her December 6, 2005, surgery and subsequent treatment and care.

49. Upon information and belief the providers of care for Ms. Kenseth also have not been paid the appropriate benefits under the terms of the policy.

50. Upon information and belief, Dean's review of Kenseth's claim and its denial of her claim failed to consider information regarding Dean's breaches of fiduciary duty as determined by the Seventh Circuit Court of Appeals and therefore the denial of the claim was arbitrary and capricious and an abuse of discretion.

## CLAIMS

### I. ERISA BREACH OF FIDUCIARY DUTY

Plaintiff alleges as follows:

51. Re-alleges the allegations in paragraphs 1 through 50 above.

52. Plaintiff performed all conditions precedent pursuant to the terms of the policy described above.

53. Plaintiff Deborah A. Kenseth is entitled to benefits under the policy, which have not been paid to the various providers of care, the parties listed above, including the surgery of December 6, 2005, and for her subsequent treatment of infections of her abdomen, pelvis, and lungs, and for other expenses for treatment related to her gastric stenosis.

54. The Seventh Circuit Court of Appeals has already determined that Dean breached its fiduciary duty to Kenseth by:

   a. providing her with a summary of her insurance benefits that was less than clear as to coverage for her surgery;

   b. inviting her to call its customer service representative with questions about coverage but failing to inform her that whatever the customer service representative told her did not bind Dean and that Dean might deny claims that callers were told would be covered; and

   c. failing to provide her an alternative channel or advising her what alternative channel she could pursue in order to obtain a definitive determination of coverage in advance of her surgery;

64. Dean also breached its fiduciary duty by negligently training the customer service representatives whom it encouraged plan participants to seek coverage information, and by failing to make payment for plaintiff's treatment to its providers and affiliates.

65. Dean further enriched itself and the parties listed in Exhibit A by committing the fiduciary breach which induced plaintiff to accept the treatment recommended and thus become financially liable to the affiliated providers.

66. Upon information and belief, Dean's review of Kenseth's claim and its

9

denial of her claim failed to consider information regarding Dean's breaches of fiduciary duty as determined by the Seventh Circuit Court of Appeals and therefore the denial of the claim was arbitrary and capricious and an abuse of discretion.

67. As a proximate result of the breaches of fiduciary duty, plaintiff is alleged to be liable to dean providers affiliated with Dean Health Plan who are benefited by providing services to Kenseth based on Dean's breach of fiduciary duties and is entitled to equitable relief.

## II.  RELIEF SOUGHT

68. Pursuant to Section 1132(a)(3), plaintiff seeks appropriate equitable relief to redress Dean's breaches of its fiduciary duty and to enforce the provisions of ERISA including an order requiring Dean to do the following:

a.   cure the ambiguity in the summary plan description which directs plan participants to the appropriate procedure by which a participant can obtain a binding coverage determination prior to incurring the costs of care

b.   cure the ambiguity in the summary plan description which states under what circumstances services related to non covered services are also not covered in light of the Seventh Circuit Court of Appeals decision determining the plan's ambiguity as to whether or not Kenseth's care is a covered benefit under the plan given that her prior banding surgery in 1987 was a covered benefit under her prior employer's health insurance plan.

c.   amend the certificate to state that statements made by customer

representatives about coverage for a procedure are not binding on Dean and that Dean can deny claims that callers were told were covered.

d.   train customer service representatives to inform individuals calling with coverage questions that statements made by customer representatives about coverage for a procedure are not binding on Dean and that Dean can deny claims that callers were told were covered.

e.   implement a procedure by which individuals with coverage questions regarding non-emergency procedures or treatment can receive a binding determination whether there is coverage for the procedure or treatment.

f.   amend the Plan to clearly describe that a participant seeking a non-emergency procedure or treatment can receive a binding coverage determination before costs are incurred.

g.   pay the providers of care for Kenseth as set forth in Exhibit A the amounts Dean would have paid those providers for those services if there had been coverage as Deborah A. Kenseth was told thereby enforcing the terms of the Plan and holding Deborah A. Kenseth harmless for those amounts.

h.   issue an injunction enjoining all subsidiary or parent corporations of Defendant and affiliates of those corporations from collecting fees for services rendered to plaintiff on the theories of negative unjust enrichment, inequitable conduct, and knowing participation in a breach of fiduciary duty.

i.   issue an order requiring defendant to make whole all unaffiliated entities to whom plaintiff owes a debt due to the services provided as cited above.

  j. order defendant to pay a surcharge and/or to pay restitution to plaintiff equaling the total amount of money plaintiff owes to other parties directly due to defendants' breach of its fiduciary duty.

  k. order defendant to pay plaintiff's attorneys fees and costs of this action.

  l. order defendant to honor their policy of covering the costs of medical expenses incurred when a customer service representative tells a participant that the upcoming procedures or services will be covered prior to costs incurred when in fact defendant determines the services should not be covered.

  m. order defendant to honor their policy of covering the costs of medical expenses incurred when Dean mistakenly misleads a participant in light of the Seventh Circuit Court of Appeals decision stating Dean breached its fiduciary duty to plaintiff by failing to have a proper procedure by which she could obtain a binding coverage decision before costs were incurred.

WHEREFORE, plaintiff demands judgment against the defendant to recover benefits due under the terms of the policy, equitable relief, and injunctive relief, requested above and for attorney fees, costs and expenses and such other relief as the court may deem just and equitable.

Additionally, plaintiff moves the court to determine whether or not the entities listed in Exhibit A are necessary parties pursuant to Fed. R. Civ. P. 19(a).

**A JURY DEMAND OF 7 PERSONS IS HEREBY REQUESTED.**

Dated : September 14, 2010

             LAWTON & CATES, S.C.


              s/ Lisa C. Goldman,
             Lisa C. Goldman, SBN 1029893
             Lawton & Cates, S.C.
             Attorneys for Plaintiff

10 East Doty Street
P.O. Box 2965
Madison, Wisconsin 53701-2965
(608) 282-6200
(608) 282-6252 – fax
lgoldman@lawtoncates.com