UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

DEBORAH A. KENSETH,

        Plaintiff,                                      Case No.:  08-C-1-C

   v.

DEAN HEALTH PLAN, INC.,

        Defendant.

---

**BRIEF IN SUPPORT OF DEFENDANT'S
SECOND MOTION FOR SUMMARY JUDGMENT**

---

## INTRODUCTION

This case is back before the District Court following a remand from the Seventh Circuit Court of Appeals.  In the decision it issued on June 28, 2010, the appellate court affirmed the dismissal of two of plaintiff's three claims and vacated the grant of summary judgment as to plaintiff's remaining claim for breach of fiduciary duty.  With respect to that claim and that claim only, the Court of Appeals remanded "for a determination as to whether Kenseth is seeking any form of equitable relief that is authorized by 29 U.S.C. § 1132(a)(3) and, if so, for further proceedings on that claim as are consistent with this opinion."  Kenseth v. Dean Health Plan, 610 F.3d 452, 483 (7th Cir. 2010); slip op. at 65.

In remanding the matter, the Seventh Circuit recognized the narrow scope of relief available under § 1132(a)(3) and observed that, if plaintiff Deborah Kenseth could not identify a form of equitable relief appropriate to the facts of this case, then this lawsuit could be dismissed on the grounds that it fails to state a claim upon which relief may be granted.  Id.; slip op. at 64.

Following the remand, Kenseth was given the opportunity to identify each form of equitable relief she claimed was appropriate to the facts of this case.  In a Second Amended Complaint that Kenseth filed on September 13, 2010, she included a long section on "Relief Sought" that continued for three pages and included thirteen different types of relief alleged to be equitable and appropriate.  This listing is found in the Second Amended Complaint at paragraph 68, subparts a. through m.

Plaintiff ended her new complaint with a WHEREFORE clause in which she demanded judgment "against the defendant to recover benefits due under the terms of the policy …"  (2nd Am. Complt. at 12).  Such relief is clearly not available to her.  As the opinion of the Seventh Circuit Court of Appeals explained, a denial-of-benefits claim may only be pursued under ERISA § 1132(a)(1)(B) and Kenseth never pursued such a claim.  Kenseth, 610 F.3d at 482; slip op. at 63.  The Seventh Circuit opinion was clear that Kenseth may not obtain denial-of-benefits recovery under the guise of a claim for breach of fiduciary duty.  Id. at 483; slip op. at 63.

The viability of plaintiff's breach of fiduciary duty claim depends on whether her Second Amended Complaint identifies a form of relief to which she might be entitled under the narrow scope of relief authorized by ERISA § 1132(a)(3).  This brief will demonstrate that plaintiff has not identified appropriate equitable relief and, therefore, the Second Amended Complaint fails to state a claim upon which relief may be granted and must be dismissed.

## FACTUAL BACKGROUND

The factual background of this claim is explained in the Seventh Circuit opinion and in the summary judgment briefs the parties filed in 2008.  Therefore, only an abbreviated version is provided here.[1]

---

[1] With this brief, DHP submits its statement of proposed undisputed facts to provide the background of the lawsuit. The proposed facts are largely taken from the summary judgment record created in 2008 and supported by the

Plaintiff Deborah A. Kenseth has been employed by Highsmith, Inc. since 1996. (DHPPF #3). Highsmith is headquartered in Ft. Atkinson, Wisconsin and has over 200 employees. (DHPPF #4).

Highsmith sponsored a health insurance plan for eligible employees, including Deborah Kenseth. (DHPPF #5). For a time, Highsmith contracted with defendant Dean Health Plan, Inc. (hereafter DHP or Dean), a Wisconsin corporation, to provide a policy of group health insurance under which eligible Highsmith employees could seek benefits. (DHPPF #2, 60). Kenseth's coverage under the group policy issued by DHP to Highsmith began on August 1, 1996. (DHPPF #6). Her coverage under the Dean Health Plan ended on December 31, 2006. (DHPPF #59).

Highsmith, Inc. previously contracted with Dean Health Plan, Inc. for group health insurance benefits for its employees, including Kenseth, but has not done so since December 31, 2006. (DHPPF #60). Highsmith did not contract with DHP for group health insurance benefits for Highsmith employees in the years 2007, 2008, 2009 and 2010 (DHPPF #61). There is no pending contract between DHP and Highsmith to provide group health benefits in 2011 or at any time beyond that. (DHPPF #62).

The crux of Kenseth's complaint is that she was denied insurance coverage by DHP for the costs of a surgery she underwent on December 6, 2005 to revise and bypass a gastric band that had been placed in her stomach eighteen years earlier to treat a condition of morbid obesity. (¶31 2nd Am. Complt.). DHP denied her claim for health insurance benefits for that surgery, citing specific policy exclusions. (DHPPF #35). Thus, DHP did not cover the costs of the December 6, 2005 surgery or the costs of the treatment needed thereafter to address

depositions, declarations and exhibits assembled then. Because those source materials are already part of the court file, DHP is not resubmitting them now. Instead, the only new documents DHP relies on are plaintiff's Second Amended Complaint and the newly-filed Michael Weber Declaration.

complications arising from the surgery.  (DHPPF #45).  Kenseth protested the denial of benefits administratively.  (DHPPF #39).

After an internal grievance procedure resulted in no change in DHP's coverage position, Kenseth filed suit in Dane County Circuit Court on December 6, 2007, asserting two state law claims:  (1) breach of contract; and (2) breach of the duty of good faith and fair dealing.  (Dkt. Entry #1).

On January 3, 2008, DHP filed a timely notice of removal transferring the case to this Court on the basis of ERISA preemption.  (Dkt. Entry #1).  Thereafter, DHP filed a motion to dismiss in lieu of answer, arguing that plaintiff's state law claims were subject to preemption under ERISA § 415(a), 29 U.S.C. § 1444(a).  (Dkt. Entry #2).

In response to DHP's motion to dismiss, plaintiff filed an amended complaint that eliminated the two state law causes of action and replaced them with three new theories of relief: (1) ERISA breach of fiduciary duty; (2) ERISA estoppel; and (3) violation of Wisconsin statutes imposing restrictions on the use of a pre-existing medical condition to deny health insurance benefits.  (Dkt. Entry #8).

DHP moved for summary judgment and its motion was granted.  (Dkt. Entries #22 and #47).  Kenseth appealed.  (Dkt. Entry #49).  On June 28, 2010, the Seventh Circuit Court of Appeals affirmed the dismissal of Kenseth's claims for equitable estoppel and for purported violation of Wisconsin's limit on exclusions for pre-existing conditions.  With respect to the breach of fiduciary duty claim, the appellate court vacated the grant of summary judgment and remanded the case to this court for a determination as to whether Kenseth was seeking any form of equitable relief that is authorized by 29 U.S.C. § 1132(a)(3) and, if so, for further proceedings on that claim.  (DHPPF #65).

4

Following remand, this court conducted a status conference and granted Kenseth time to file an amended complaint.  (DHPPF #66).  On September 13, 2010, Kenseth followed through by filing a Second Amended Complaint to identify the "appropriate equitable relief" to which she claimed to be entitled.  (DHPPF #67).  Thereafter, DHP filed a timely answer that denied Kenseth had identified a viable form of equitable relief and affirmatively alleged that her Second Amended Complaint must be dismissed for failure to state a claim upon which relief may be granted.  (DHPPF #68).

## ARGUMENT

I.     **BECAUSE KENSETH HAS FAILED TO IDENTIFY ANY FORM OF EQUITABLE RELIEF THAT MIGHT BE AVAILABLE TO HER UNDER THE FACTS OF THIS CASE, HER SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED AND IT MUST BE DISMISSED.**

Paragraph 68 of Kenseth's Second Amended Complaint has thirteen subparts, each identifying a form of equitable relief that Kenseth seeks under ERISA § 1132(a)(3).  The list of thirteen can be grouped into four categories.  The first six subparts of paragraph 68 form one category because each seeks an order requiring DHP to change its plan language or alter its business operations in a specified way.  In the second category are five of the remaining subparts, g., i., j., l. and m., each of which seeks compensatory damages, not equitable relief.  Of those five, two subparts, l. and m., have a second fatal problem in that they are contrary to the law of the case as expressed in the Seventh Circuit opinion.  The third category consists of one subpart of paragraph 68, subpart h., which asks the court to issue an injunction against business entities that have never been parties to this lawsuit and have never been subject to this court's jurisdiction during the nearly three years of this lawsuit's existence.  Finally, the fourth category

is subpart k., which seeks attorney fees and costs on the assumption that such an award constitutes "appropriate equitable relief."

None of the thirteen subparts of paragraph 68 identifies a viable form of appropriate equitable relief. The first six are not available to Kenseth because she has not been eligible for benefits under any DHP plan since December 31, 2006. She has been a stranger to DHP for nearly four years and lacks standing to pursue modifications of a plan and changes in a business with which she has no relationship. Second, Kenseth is not entitled to compensatory damages under the guise of equitable relief. The Seventh Circuit opinion in this case could not be clearer on that point. Third, Kenseth cannot request equitable relief that consists of asking this court to enjoin non-party businesses from collecting for medical services rendered. The court simply lacks jurisdiction to issue orders to parties that are not before it. Finally, Kenseth cannot seek recovery of attorney fees and costs as a form of equitable relief under § 1132(a)(3) because the ERISA scheme addresses attorney fees elsewhere. Kenseth is left with no viable claim for appropriate equitable relief, so the claim must be dismissed.

**A.      Kenseth Lacks Standing to Obtain the First Six Forms of Alleged Equitable Relief Identified in Her Complaint.**

The statutory provision pursuant to which Kenseth seeks relief authorizes only a limited range of remedies for a limited universe of possible plaintiffs. Therefore, a threshold question is whether Kenseth satisfies the standing requirements imposed by ERISA § 1132(a)(3), which provides as follows:

> A civil action may be brought by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.

Kenseth is clearly not a fiduciary under ERISA, so she is eligible to pursue a claim under § 1132(a)(3) only if she qualifies as a "participant" or "beneficiary." Both are defined terms. Under ERISA, a participant is "any employee or former employee … who is or may become eligible to receive a benefit of any type from an employee benefit plan ... ." 29 U.S.C. § 1002(7). A beneficiary is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). Kenseth is not seeking recovery as a beneficiary in this lawsuit; instead, she predicates her right to sue on her status as a participant.

But Kenseth has not been a participant in any DHP plan since December 31, 2006, nearly four years ago. If she had made a denial-of-benefits claim under ERISA § 1132(a)(1)(B), she might have claimed that she fit the statutory definition of "participant" because she was an employee alleging that she was eligible to receive a benefit from the DHP plan. Kenseth made the conscious choice not to pursue a denial-of-benefits claim, however. That choice makes it doubtful that she currently satisfies the statutory definition of "participant" with respect to any claim against Dean.

Fitting within the statutory definition is key because ERISA carefully limits the universe of individuals entitled to seek relief under § 1132(a)(3). Simply put, if Kenseth is not a "participant," ERISA does not authorize her claim. As explained in <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 117 (1989),"[t]o say that a 'participant' is any person who claims to be one begs the question of who is a 'participant' and renders the definition set forth in § 1002(7) superfluous."

Even if Kenseth surmounts the definitional hurdle, she still lacks standing to pursue the first six forms of relief she identifies as "appropriate equitable relief."  She asks for an order requiring Dean to:

    a.     cure the ambiguity in the DHP summary plan description regarding procedures for obtaining a binding coverage determination before incurring costs of care;

    b.     cure the ambiguity in the DHP summary plan description regarding whether non-covered services include services needed to treat complications arising from conditions addressed before Dean coverage began and for which a prior policy had provided coverage;

    c.     amend the DHP certificate to advise that statements made by customer representatives about coverage are not binding;

    d.     train customer service representatives to inform individuals calling with coverage questions that statements made by the customer representatives about coverage are not binding;

    e.     implement a procedure by which individuals with coverage questions can receive a binding determination about coverage before an anticipated procedure or treatment; and

    f.     amend the DHP plan to advise a participant how to receive a binding coverage determination before costs are incurred.

In short, Kenseth seeks an order requiring Dean to modify its plan language and business operations.  She seeks such an order even though she has not been covered by any DHP plan since December 31, 2006.

It is a familiar proposition that "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them."  <u>DeFunis v. Odegaard</u>, 416 U.S. 312, 316 (1974), <u>quoting</u> <u>North Carolina v. Rice</u>, 404 U.S. 244, 246 (1971).  The federal judiciary cannot review moot cases because of the Article III requirement that conditions exercise of judicial power on the existence of a case or controversy.  <u>Id.</u>

The mootness doctrine applies here because Kenseth is not covered by any DHP plan. Her DHP coverage ended on December 31, 2006.  She is a stranger to DHP's current contract documents and business operations.  She lacks "participant" status for the first six forms of alleged equitable relief to which she claims entitlement in her Second Amended Complaint.

Article III standing requires an injury that is actual or imminent, not conjectural or hypothetical.  <u>Hangarter v. Provident Life</u>, 373 F.3d 998, 1021 (9th Cir. 2004).  Where a plaintiff has no current contractual relationship with a defendant, that plaintiff is not personally threatened by its conduct and cannot seek to control that conduct by invoking the court's injunctive powers. <u>Id.</u>  As the Seventh Circuit has explained:

> The federal courts cannot use their injunctive power in the absence of a party who will benefit from the exercise of such authority. Injunctions cannot be issued just for the common weal or on behalf of those who, although not parties, are currently or may be in the future burdened by the defendant's allegedly illegal conduct.

<u>Mazanec v. North Judson-San Pierre School Corp.</u>, 798 F.2d 230, 234 (7th Cir. 1986).  Kenseth could not benefit from a change in the DHP plan language or its business operations because she has not been a Dean subscriber for nearly four years.

Article III mootness has been described by the United States Supreme Court as "the doctrine of standing set in a time frame:  The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."

9

Arizonans for Official English v. Arizona, 520 U.S. 43, 68, n. 22 (1997), quoting United States

Parole Commission v. Geraghty, 445 U.S. 388, 397 (1980).  In other words, an actual

controversy must exist at all stages of review, not merely at the time the complaint is filed.

Arizonans for Official English, 520 U.S. at 67.  A lawsuit viable at the outset of the litigation can

lose vitality as claims are stripped away and plaintiff is shown to lack standing to pursue the only

claim remaining.  See Bond v. Utreras, 585 F.3d 1061, 1069 (7th Cir. 2009) (quoting Daimler

Chrysler Corp. v. Cuno, 547 U.S. 332, 341 (2006), for the proposition that "[i]f a dispute is not a

proper case or controversy, the courts have no business deciding it …").

      In the ERISA context specifically, courts have determined that a plaintiff who is no

longer a plan participant has limited or no ability to seek the equitable relief available under

§ 1132(a)(3).  See Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100-01 (2nd Cir. 2005), and

Owen v. Regence BlueCross BlueShield of Utah, 388 F. Supp. 2d 1318, 1327-28 (D. Utah 2005).

In both Nechis and Owen, the plaintiff who sought equitable relief under § 1132(a)(3) was no

longer entitled to health insurance benefits from the entity she sued.  In both instances, the courts

found a lack of standing.  In Nechis, the court observed that the plaintiff could no longer benefit

from the injunctive relief she sought, so she did not have standing to seek it.  421 F.3d at 100.  In

Owens, the plaintiff was also held to lack standing to seek injunctive and declaratory relief from

her former health insurance provider.  388 F. Supp. 2d at 1328.

      Similarly, in Chemung Canal Trust Co. v. Sovfran Bank/Maryland, 939 F.2d 12, 15 (2nd

Cir. 1991), the court examined the ERISA definitions of those eligible to pursue § 1132(a)(3)

claims and held that a former fiduciary no longer had standing to seek equitable relief for a

benefit plan to which he was then a "complete stranger."  Just as former fiduciaries lack standing

under ERISA to pursue equitable relief, so too does ERISA prevent former plan participants

from invoking the court's equitable power to change the business operations of a party to whom

the former plan participant is now a "complete stranger."

      **B.**      **<u>Kenseth Cannot Recover Compensatory Damages In the Guise Of a Claim</u>**
                **<u>For Equitable Relief</u>.**

Five of the thirteen subparts setting forth the equitable relief to which Kenseth claims

entitlement are nothing more than claims for compensatory damages.  These are the category two

requests for relief identified as follows:

> Subpart g.      seeks an order requiring Dean to pay Kenseth's care providers as if
>                  the services had been covered by the DHP plan;
>
> Subpart i.      requests an order requiring DHP to make whole all entities to
>                  whom Kenseth owes a debt for the services provided;
>
> Subpart j.      requests an order requiring DHP to pay a surcharge or restitution to
>                  Kenseth equaling the total amount of money she owes other parties
>                  because of the alleged breach of fiduciary duty; and
>
> Subparts l. and m.      seek an order requiring DHP to honor an alleged policy of
>                  covering costs that a participant incurs after being given
>                  mistaken advice by Dean.

All of these subparts are a variation on a common theme; they seek recovery of compensatory

damages, not equitable relief.

When the Seventh Circuit Court of Appeals remanded this case for further proceedings, it

was very specific in explaining the limitations on the relief available under ERISA § 1132(a)(3).

The court stated:

> . . . The language of this section also imposes an important
> limitation on the type of relief that is available:  it allows only
> injunctive and "other appropriate equitable relief;" compensatory
> damages and other forms of legal relief are beyond the scope of the
> relief authorized.
>
> ***

>Hints may be found in certain paragraphs of Kenseth's complaint
>suggesting that Dean was wrong in refusing to cover her
>Roux-en-Y procedure and attendant hospitalization, but this sort of
>allegation will not support an award of equitable restitution.  This
>is, in effect, an allegation that Dean erred in denying Kenseth's
>claim for insurance benefits.  However, a denial-of-benefits claim
>may only be pursued under § 1132(a)(1)(B).  [citations omitted]
>As we have noted, the absence of such a claim from Kenseth's
>complaint is almost certainly explained by the broad discretion that
>Dean enjoys in construing the terms of the Certificate, which in
>turn would necessitate a showing that its decision to deny
>Kenseth's claim was arbitrary and capricious.  Notwithstanding the
>obstacles to relief under § 1132(a)(1)(B), Kenseth may not obtain
>comparable relief under the guise of a claim for breach of fiduciary
>duty.  [citations omitted]

Kenseth, 610 F.3d at 482; slip op. at 62-63.

As another Seventh Circuit Court case observed, a claim for money due and owing under

a contract is "quintessentially an action at law."  Wal-Mart Stores v. Wells, 213 F.3d 398, 401

(7th Cir. 2000), *cert denied* 531 U.S. 981 (2000).  Thus, a plaintiff cannot convert a claim for

damages for breach of contract into an equitable claim by the "facile trick" of asking that a

defendant be enjoined or ordered to pay the amount plaintiff believes is due and owing.  Id.

It is important to note that Kenseth specifically declined to pursue a claim for benefits

under § 1132(a)(1)(B).  That section authorizes suit by a plan participant to recover benefits due

under the terms of a plan.  Varity Corp. v. Howe, 516 U.S. 489 (1996), confirms that §

1132(a)(3) authorizes only "appropriate" equitable relief and observes that, where relief is

available to a plan participant under other ERISA provisions, such as § 1132(a)(1)(B), relief may

not be warranted under § 1132(a)(3).  The Varity Court wrote:

>We should expect that courts, in fashioning "appropriate" equitable
>relief, will keep in mind the "special nature and purpose of
>employee benefit plans," and will respect the "policy choices
>reflected in the inclusion of certain remedies and the exclusion of
>others."  Pilot Life Ins. Co. v. DeDeaux, 481 U.S. 41, 45 (1987).
>[other citations omitted]  Thus, we should expect that where

12

> Congress elsewhere provided adequate relief for a beneficiary's
> injury, there will likely be no need for further equitable relief, in
> which case such relief normally would not be "appropriate."

Varity, 516 U.S. at 515.  In short, a breach of fiduciary duty claim is not an alternate avenue to seek recovery for the denial-of-benefits claim that Kenseth elected to forego.

In a recent ERISA case, the Seventh Circuit observed that, following Varity, most of the other circuit courts had adopted the view that, if relief is available to a plan participant under the ERISA subsection for denial-of-benefit claims, then relief is unavailable under the ERISA subsection authorizing appropriate equitable relief.  Mondry v. American Family Mut. Ins. Co., 557 F.3d 781, 805 (7th Cir. 2009).  The court stated that it had not considered that precise question itself, but had been given no reason to depart from the holdings of its sister circuits on that score.  Id.

Kenseth cannot transform breach of contract damages into equitable relief by using words often associated with courts of equity.  Seeking a declaratory order that defendant pay money is no different than seeking an award of compensatory damages.  Requesting payment of restitution to plaintiff, as Kenseth does in subpart j., does not change the fact that what she is actually seeking is payment of contract damages.  "Almost invariably … suits seeking (whether by judgment, injunction or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty."  Great-West Life & Annuity Ins. Co. v. Knutson, 534 U.S. 204, 210 (2002), quoting Bowen v. Massachusetts, 487 U.S. 879, 918-19 (1988) (Scalia, J. dissenting).  Money damages are the classic form of legal relief.  Great-West, 534 U.S. at 210, citing Mertens v. Hewitt Associates, 508 U.S. 248, 255 (1993).  Such damages are not available as equitable relief under § 1132(a)(3).

Subparts l. and m. of plaintiff's list of requested equitable relief merit a further response. Those subparts seek an order requiring defendant to honor an alleged "policy" of covering the costs of medical expenses that are incurred based on mistaken information from Dean.  Not only do these subparts seek payment of compensatory damages not within the scope of appropriate equitable relief, they also seek relief for a claim that is not viable under the law of the case doctrine.  This doctrine reflects the idea that a single court should not revisit its earlier rulings unless there is a compelling reason to do so.  The doctrine is designed to further consistency, to avoid constantly revisiting rulings, and to conserve judicial resources.  Sharp Electronics Corp. v. Met Life Insurance, 578 F.3d 505, 510 (7th Cir. 2009).

The law of the case doctrine applies here to prohibit plaintiff from pursuing the relief identified in subparts l. and m.  Kenseth previously argued before this Court and the Seventh Circuit Court of Appeals that Dean should be obliged to pay Kenseth's medical expenses based on Dean's history of having on occasion paid the medical expenses incurred by other participants who had received mistaken advice from Dean.  Both this Court and the Seventh Circuit Court of Appeals concluded that Kenseth's argument was without merit.  The Seventh Circuit addressed the issue as follows:

> There was some testimony below to the effect that Dean on occasion has provided coverage when a member has incurred medical expenses in reliance on mistaken advice she has been given by one of Dean's customer service representatives.  (R. 30 Paskey Dep. at 24-26), but like the district court, we do not believe this has any material bearing on the legal issues presented in this case.

Kenseth, 610 F.3d at 461, n. 5; slip op. at 14, n. 5.  Kenseth cannot resurrect a claim that the Seventh Circuit determined has no material bearing on the legal issues.  That claim is gone.

14

**C.      Appropriate Equitable Relief Under ERISA § 1132(a)(3) Does Not
Encompass the Issuance Of An Injunction Against Entities Not Parties To
the Lawsuit and Not Subject To the Court's Jurisdiction.**

In subpart h. of paragraph 68, Kenseth seeks equitable relief that she describes as follows:

> h.      issue an injunction enjoining all subsidiary or parent
> corporations of Defendant and affiliates of those
> corporations from collecting fees for services rendered to
> plaintiff on the theories of negative unjust enrichment,
> inequitable conduct, and knowing participation in a breach
> of fiduciary duty.

(2nd Am. Compt. at 11).  In short, Kenseth is asking the court to enjoin parties other than DHP,

apparently on the theory that, if those entities are related to or affiliated with DHP, that is good

enough.  It is not.  Valid service of process is necessary in order to assert personal jurisdiction

over any party.  Rabiolo v. Weinstein, 357 F.2d 167, 168 (7th Cir. 1966), *cert denied* 391 U.S.

923 (1968).  Even actual notice of a lawsuit is insufficient to satisfy Rule 4's requirements of

personal service.  Mid-Continent Wood Products, Inc. v. Harris, 936 F.2d 297, 301 (7th Cir.

1991).

This case is back before the district court on a remand of limited scope.  The question is

whether Kenseth has identified a form of appropriate equitable relief that might be available to

her under ERISA § 1132(a)(3).  If so, further proceedings on the breach of fiduciary duty claim

are authorized; if not, the claim is dismissed and the lawsuit is over.

The Seventh Circuit remand did not contemplate and did not authorize plaintiff's attempt

at a wholesale expansion of the lawsuit to include parties never previously named.  Indeed, there

is no rule of civil procedure that allows any plaintiff to add parties to a lawsuit by the mere

attachment of an Exhibit A to her complaint.  Plaintiff's half-hearted effort to involve numerous

additional entities in this lawsuit, without notice, without due process, without authorization, and

without regard to the limited scope of the Seventh Circuit remand, is more than unavailing -- it is just plain wrong.

Beyond that, plaintiff's reference in subpart h. of paragraph 68 to "theories of negative unjust enrichment, inequitable conduct and knowing participation in a breach of fiduciary duty" are words without substance uttered against entities who have never been parties to this litigation.  The assertion is improper and certainly does not state a viable claim for relief.

Subpart h. of paragraph 68 is a nonstarter because of its procedural and jurisdictional defects.  Beyond that, subpart h. is nothing more than a request for compensatory damages in disguise, something § 1132(a)(3) does not authorize.  <u>Kenseth</u>, 610 F.3d at 482; slip op. at 63. Enjoining providers of uninsured medical services from collecting payment for those services is just another way of getting the same relief a denial-of-benefits claim could have provided. Kenseth cannot escape the fact that it was her choice to forego the claim otherwise available to her under § 1132(a)(1)(B).

**D.      An Award Of Attorney Fees and Costs Is Not A Form Of Appropriate Equitable Relief Under ERISA § 502(a)(3).**

Subpart k. of paragraph 68 seeks equitable relief through an order requiring defendant to pay plaintiff's attorney fees and costs.  (2nd Am. Complt. at 12).  This is the fourth and last category from Kenseth's list.

ERISA provides that, in an action brought by a "participant, beneficiary or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).  Because attorney fees and costs are addressed in § 1132(g)(1), they are not available as "appropriate equitable relief" under § 1132(a)(3).

Many cases have noted that ERISA is a comprehensive regulatory statute with which courts should be loath to tamper.  <u>Mertens v. Hewitt Associates</u>, 508 U.S. 248, 251 (1993).

Therefore, the statute is not to be extended by providing remedies not specifically authorized by its text. Great-West Life, 534 U.S. at 209, citing Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 147 (1985). ERISA's "carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" Mertens, 508 U.S. at 254, quoting Russell, 473 U.S. at 146-47. Here, because attorney fees are addressed in one ERISA section, they cannot be imported to another.

The enforcement scheme of ERISA does not allow plaintiff to double up by counting attorney fees both as "appropriate equitable relief" under § 1132(a)(3) and the prize potentially available to a prevailing party under § 1132(g)(1). Imagine how absurd it would be to have attorney fees be recoverable as equitable relief and then have that recovery satisfy the prevailing party requirement for a second award of the same fees. Nothing in ERISA authorizes that.

Before a party is determined to "prevail," that party must have received at least some relief on the merits of his or her claim. Buckhannon Board & Care Home v. West Virginia Department of Health and Human Services, 532 U.S. 598, 603 (2001). Kenseth has not prevailed. She initially brought two state law claims that she subsequently discarded. She then brought three different claims and had two of them dismissed. The only claim not yet dismissed is the claim for breach of fiduciary duty. As to that claim, the Seventh Circuit opinion was quite clear in explaining that the claim survives only if Kenseth can identify a form of appropriate equitable relief to which she might be entitled. Notably, the Seventh Circuit did not suggest a form of equitable relief potentially available to Kenseth, as it did for the plaintiff in the Mondry case last year. Mondry, 552 F.3d at 805-06. This time the Seventh Circuit simply left it to Kenseth to identify a viable form of appropriate equitable relief. She has not done so.

Accordingly, she has failed to state a claim upon which relief may be granted and it must be dismissed.  Kenseth, 610 F.3d at 483; slip op. at 64.

## II.    SUMMARY JUDGMENT OF DISMISSAL IS WARRANTED HERE.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In this case, the pleadings alone, augmented only with deposition and declaration evidence that Kenseth has not been a Dean subscriber for nearly four years, provide the basis for concluding that plaintiff has failed to state a claim upon which relief must be granted.  Those materials show that Dean is entitled to judgment of dismissal as a matter of law.

To proceed with an ERISA breach of fiduciary duty claim, a plaintiff must show the existence of some appropriate equitable relief.  This is an essential element of the claim on which plaintiff bears the burden of proof.  Without such proof, the claim fails and must be dismissed. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Kenseth was given substantial direction by the Seventh Circuit opinion and substantial time by this court to state a claim for appropriate equitable relief.  Kenseth came up with thirteen variations of relief that she alleged would constitute "appropriate equitable relief."  In fact, however, none of those thirteen requests fits the bill.  None represents a type of appropriate equitable relief that Kenseth has standing to pursue or that ERISA allows.

## CONCLUSION

Plaintiff Deborah Kenseth has not identified a form of appropriate equitable relief available to her for the alleged breach of fiduciary duty claim.  Therefore, plaintiff's Second

Amended Complaint fails to state a claim upon which relief may be granted and it must be dismissed.  Accordingly, defendant Dean Health Plan, Inc. respectfully urges the court to grant its second motion for summary judgment dismissing this lawsuit with prejudice.

        DATED:  November 15, 2010.

                                          BOARDMAN, SUHR, CURRY & FIELD LLP
                                          By

                                          */s/ Catherine M. Rottier*
                                          Richard L. Schmidt, #1018315
                                          Catherine M. Rottier, #1016342
                                          Attorneys for Defendant Dean Health Plan, Inc.
                                          U.S. Bank Building, Suite 410
                                          1 South Pinckney Street
                                          P. O. Box 927
                                          Madison, Wisconsin  53701-0927
                                          (608) 257-9521
                                          rschmidt@boardmanlawfirm.com
                                          crottier@boardmanlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of November 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address:

lgoldman@lawtoncates.com

/s/ Catherine M. Rottier
Richard L. Schmidt, #1018315
Catherine M. Rottier, #1016342
Boardman, Suhr, Curry & Field LLP
U.S. Bank Building, Suite 410
1 South Pinckney Street
P. O. Box 927
Madison, Wisconsin  53701-0927
(608) 257-9521
rschmidt@boardmanlawfirm.com
crottier@boardmanlawfirm.com
Attorneys for Defendant Dean Health Plan, Inc.